J-A09032-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NICHOLAS L BOWEN | : | |
| | : | No. 1078 WDA 2017 |
| Appellant | : | |

Appeal from the Judgment of Sentence March 3, 2017
In the Court of Common Pleas of Venango County Criminal Division at
No(s):  CP-61-CR-0000866-1997

BEFORE:  BOWES, J., DUBOW, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    FILED SEPTEMBER 5, 2018

Nicholas L. Bowen (Appellant) appeals from the judgment of sentence imposed following a resentencing hearing held pursuant to the United States Supreme Court's decision in Montgomery v. Louisiana, 136 S. Ct. 718 (2016).  The trial court resentenced Appellant to life imprisonment without the possibility of parole on a conviction of first-degree murder, which he committed when he was 17 years old.  In consideration of our Supreme Court's recent decision in Commonwealth v. Batts, 163 A.3d 410 (Pa. 2017) ("Batts II"), we are constrained to vacate Appellant's judgment of sentence and remand for further proceedings consistent with Batts II.

On October 27, 1997, Appellant brutally raped and murdered Shenee Freeman, who was four years old at the time of her death.  At the time of the offense, Appellant was 17 years, 8 months, and 25 days old.  On September

30, 1998, Appellant pled guilty to first-degree murder. The same day, the trial court sentenced him to life imprisonment without the possibility of parole. On February 23, 2000, this Court dismissed Appellant's direct appeal on procedural grounds. See Order (1760 WDA 1999), 2/23/00.

Over the course of the next decade, Appellant filed six petitions pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, each of which were denied by the PCRA court. On June 25, 2012, the United States Supreme Court decided Miller v. Alabama, 567 U.S. 460 (2012), which held that sentences of "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" Id. at 465. On January 25, 2016, while the appeal from the denial of Appellant's sixth PCRA petition was pending before this Court, the United States Supreme Court decided Montgomery v. Louisiana, 136 S. Ct. 718 (2016). In Montgomery, the Supreme Court concluded that the holding of Miller applied retroactively to juvenile offenders on collateral review. Id. at 736. On April 29, 2016, this Court affirmed the PCRA court's denial of Appellant's sixth PCRA petition. In affirming the PCRA court's denial of Appellant's sixth PCRA petition, this Court specifically did so without prejudice to Appellant's right to file another PCRA petition seeking relief pursuant to Montgomery and Miller. See Commonwealth v. Bowen, 1066 WDA 2015 at *9 (Pa. Super. Apr. 29, 2016) (unpublished memorandum).

On June 29, 2016, Appellant filed his seventh PCRA petition in which he sought resentencing under Montgomery and Miller. On January 23, 2017, the PCRA court granted Appellant's PCRA petition and scheduled the matter for resentencing. The trial court held a resentencing hearing on March 3, 2017 during which it received evidence and heard argument from both the Commonwealth and Appellant. The same day, the trial court resentenced Appellant to life imprisonment without the possibility of parole.

On March 13, 2017, Appellant filed a post-sentence motion, which the trial court denied on May 31, 2017. This timely appeal followed. On July 5, 2017, the trial court ordered Appellant to file a concise statement of the errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, which he timely filed on July 25, 2017.

On appeal, Appellant presents the following issues for review:

1. Did the lower court impose an illegal sentence as it failed to apply a presumption against the imposition of life without parole and did not require the Commonwealth to rebut that presumption by proving [Appellant] is irreparably corrupt beyond a reasonable doubt pursuant to Batts II?

2. Did the lower court err in imposing life without parole as there was not competent evidence to demonstrate [Appellant was] incapable of rehabilitation?

Appellant's Brief at 3.

For his first issue, Appellant argues that in light of our Supreme Court's decision in Batts II, the sentencing court illegally resentenced him to a term of life imprisonment without the possibility of parole. Specifically, Appellant

asserts that Batts II (1) mandates that the sentencing court apply a rebuttable presumption against the imposition of a sentence of life without parole for a juvenile offender convicted of first-degree murder and (2) requires the Commonwealth, in order to rebut that presumption, to prove beyond a reasonable doubt that the juvenile offender is permanently incorrigible and incapable of rehabilitation. Appellant maintains that the trial court applied neither the rebuttable presumption nor the appropriate burden of proof prior to imposing a life-without-parole sentence.

As our Supreme Court has explained, a claim that a court unlawfully sentenced a juvenile offender to life imprisonment without the possibility of parole is a challenge to the legality of the sentence. Batts II, 163 A.3d at 434-36. We review such claims "pursuant to a de novo standard and plenary scope of review." Id. at 435.

In 2012, the United States Supreme Court issued the landmark Miller decision. In Miller, the Supreme Court held that a sentencing scheme that mandates a sentence of life imprisonment without the possibility of parole for a juvenile offender violates the Eighth Amendment to the United States Constitution. Miller, 567 U.S. at 465. The Supreme Court, however, did not eliminate the possibility that a court could sentence a juvenile offender to life without parole. Id. at 479. Instead, the Court explained that "appropriate occasions for sentencing juveniles to this harshest possible punishment will be uncommon," especially in light of the difficulty, "even for expert

psychologists[,]" to "distinguish [ ] at this early age between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." Id. (quotations and citations omitted). As this Court has explained, to sentence a juvenile offender to life imprisonment without the possibility of parole, Miller requires examination of the following factors:

> [A]t a minimum it should consider a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home and neighborhood environment, his emotional maturity and development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation.

Commonwealth v. Knox, 50 A.3d 732, 745 (Pa. Super. 2012).

In January 2016, the United States Supreme Court in Montgomery addressed the issue of whether the holding of Miller was "retroactive to juvenile offenders whose convictions and sentences were final when Miller was decided." Montgomery, 136 S. Ct. at 725. Concluding that the holding of Miller announced a substantive rule of law that was subject to retroactive effect, the Court explained:

> Because Miller determined that sentencing a child to life without parole is excessive for all but the rare juvenile offender whose crime reflects irreparable corruption, it rendered life without parole an unconstitutional penalty for "a class of defendants because of their status" – that is, juvenile offenders whose crimes reflect the transient immaturity of youth. As a result, Miller announced a substantive rule of constitutional law. Like other substantive rules, Miller is retroactive because it necessarily

- 5 -

carr[ies] a significant risk that a defendant – here, the vast majority of juvenile offenders – faces a punishment that the law cannot impose upon him.

Id. at 734 (quotations and citations omitted).

In Commonwealth v. Batts, 66 A.3d 286 (Pa. 2013) ("Batts I"), the Pennsylvania Supreme Court addressed for the first time after Miller the sentencing of a juvenile offender convicted of first-degree murder. Noting that the United States Supreme Court in Miller declined to place a "categorical ban" on life-without-parole sentences for juvenile offenders, our Supreme Court in Batts I held that juvenile offenders convicted of first-degree murder could be subject to a life-without-parole sentence only after the sentencing court considered the criteria outlined in Miller. Id. at 296-99; see supra, p. 5.

Our Supreme Court vacated Batts' life-without-parole sentence and remanded for resentencing consistent with Miller. Id. at 299. Upon resentencing, Batts once again received a sentence of life imprisonment without the possibility of parole. Batts II, 163 A.3d at 426. Batts would go on to appeal this sentence to the Pennsylvania Supreme Court in Batts II, which the Court decided approximately a year after the United States Supreme Court's Montgomery decision.

In Batts II, our Supreme Court stated that following Miller and Montgomery, "[t]he General Assembly has not taken any appreciable steps to create a separate sentencing statute or to revise the existing law so that it

applies to juveniles convicted of first-degree murder prior to Miller." Batts II, 163 A.3d at 450. Thus, the Court proclaimed that "[i]t is abundantly clear that the exercise of our constitutional authority is required to set forth the manner in which resentencing will proceed in the courts of this Commonwealth." Id. at 450-51.

With respect to the protocol for resentencing juvenile offenders convicted of first-degree murder, our Supreme Court first determined that "a faithful application of the holding in Miller, as clarified in Montgomery, requires the creation of a presumption against sentencing a juvenile offender to life in prison without the possibility of parole." Id. at 452 (emphasis added). The Court reasoned that Miller supported the creation of such a presumption as follows:

> Miller's holding, "that life without parole is an excessive sentence for children whose crimes reflect transient immaturity," is a "substantive rule of constitutional law." Montgomery, 136 S.Ct. at 735. This, according to Montgomery, means that only "the rarest of juvenile offenders" are eligible to receive a sentence of life without the possibility of parole. Id. Only in "exceptional circumstances" will life without the possibility of parole be a proportionate sentence for a juvenile. Id. at 736.

Id. at 452.

Second, our Supreme Court held that "to overcome the presumption against the imposition of a sentence of life without parole for a juvenile offender, the Commonwealth must prove that the juvenile is constitutionally eligible for the sentence beyond a reasonable doubt." Id. at 455 (emphasis added). The Court explained that to rebut the

presumption against a life-without-parole sentence, the Commonwealth must prove, "beyond a reasonable doubt, that the juvenile offender is permanently incorrigible and thus is unable to be rehabilitated."[1] Id. at 459. The Court reasoned that this high burden of proof is necessary given that "[t]he United States Supreme Court has clearly and unambiguously instructed that the decision that an offender is one of the rare and uncommon juveniles who may constitutionally receive a sentence of life without the possibility of parole must be made with near certainty." Id. at 454-55.

Shortly following our Supreme Court's Batts II decision, this Court decided Commonwealth v. Coia, 168 A.3d 219 (Pa. Super. 2017). In Coia, the defendant was a juvenile offender who was resentenced following Batts I to life imprisonment without the possibility of parole, but not in accordance with the protocol for resentencing juvenile offenders convicted of first-degree murder set forth in Batts II. At the time of the defendant's resentencing in Coia, the Supreme Court had not yet decided Batts II.

_____

[1] The Supreme Court also held that expert testimony would not be required to rebut the presumption against imposing a life-without-parole sentence upon a juvenile offender, but noted that "[g]iven the presumption against life without parole and the Commonwealth's burden beyond a reasonable doubt to rebut the presumption, it is difficult to conceive of a case where the Commonwealth would not proffer expert testimony and where the sentence would not find expert testimony to be necessary." Batts II, 163 A.3d at 456.

Nevertheless, we concluded that the defendant in Coia was entitled to resentencing conducted pursuant to Batts II. Id. at 224. This Court explained:

> Here, the trial court resentenced Coia to a life-without-parole sentence for the first-degree murder conviction following a resentencing hearing in which it received testimony from an expert for Coia and an expert for the Commonwealth. The trial court also considered the age-related factors as dictated by our Supreme Court in Batts I. It did not, however, apply the later-established presumption against the imposition of a life-without-parole sentence or require the Commonwealth to rebut that presumption with evidence establishing beyond a reasonable doubt that Coia is "permanently incorrigible" and "unable to be rehabilitated." Batts II, 163 A.3d at 458-59[.]

Id. Accordingly, we vacated the defendant's judgment of sentence and remanded the case for resentencing in accordance with Batts II. Id.

We find Coia to be controlling in the instant matter. Here, the trial court concedes that although it analyzed all of the factors for imposing upon a juvenile offender a life-without-parole sentence set forth in Miller, it was unable to sentence Appellant in accordance with Batts II because the Supreme Court decided that case more than three months after Appellant's resentencing. Trial Court Opinion, 8/29/17, at 4. Thus, the trial court acknowledges that it did not, like the trial court in Coia, apply a presumption against the imposition of a sentence of life imprisonment without the possibility of parole or require the Commonwealth to rebut that presumption by proving beyond a reasonable doubt that Appellant is permanently incorrigible and incapable of rehabilitation. Id. at 4-5. Therefore, because

Appellant did not receive a resentencing hearing conducted in the manner to which he is constitutionally entitled, we are constrained to vacate Appellant's judgment of sentence and remand this matter for resentencing in accordance with Batts II.

The Commonwealth argues that this case is distinguishable from Coia. Specifically, the Commonwealth contends that the trial court rectified its inability to apply Batts II when resentencing Appellant in its Rule 1925(a) opinion. The Commonwealth points out that in its Rule 1925(a) opinion, the trial court stated that even if it had properly applied the rebuttable presumption against a life-without-parole sentence and required the Commonwealth to rebut that presumption by proving beyond a reasonable doubt that Appellant was permanently incorrigible and incapable of rehabilitation, it would have concluded that the Commonwealth had rebutted the presumption and satisfied its burden of proof.

We disagree. In Coia, this Court simply vacated the judgment of sentence and remanded for resentencing because the trial court, when it resentenced Coia, did not apply the rebuttable presumption against a life-without-parole sentence and it did not require the Commonwealth to rebut that presumption by proving him permanently incorrigible and incapable of rehabilitation beyond a reasonable doubt. Coia, 168 A.3d at 224.

In addition, Batts II makes clear that the sentencing court must make a finding that "the Commonwealth has satisfied its burden of proving beyond

a reasonable doubt that the juvenile is so permanently incorrigible that rehabilitation of the offender would be impossible" as a prerequisite to imposing a life without parole sentence. Batts II, 163 A.3d at 457. Once the sentencing court makes this finding, "the bar against sentencing a juvenile offender to life without the possibility of parole is lifted[,]" and "it is left to the sentencing court's discretion whether to impose a life-without-parole sentence or to instead impose a sentence that would allow the juvenile to have an opportunity for parole consideration." Id.

In this case, the sentencing court concedes it did not make a finding, prior to imposing its sentence of life imprisonment without the possibility of parole, that the Commonwealth had rebutted the presumption against a life-without-parole sentence by satisfying its burden of proving beyond a reasonable doubt that Appellant is permanently incorrigible and incapable of rehabilitation. The Supreme Court provided no indication that a sentencing court can circumvent Batts II by retrospectively applying the necessary rebuttable presumption and burden of proof in a Rule 1925(a) opinion.

We recognize that remanding this case for resentencing may result in the sentencing court arriving at the same conclusions it reached in its Rule 1925(a) opinion and thus, the imposition of a life-without-parole sentence. We conclude, however, that it is imperative that the court do so in a constitutionally firm manner in accordance with Batts II. Based on the

foregoing, we vacate Appellant's judgment of sentence and remand this matter for further proceedings consistent with Batts II. Because we are vacating Appellant's sentence and remanding for further proceedings, we need not reach his second issue (i.e., whether the Commonwealth presented competent evidence demonstrating that Appellant is permanently incorrigible).

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judge Dubow joins the memorandum.

Judge Bowes files a Concurring Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/5/2018

- 12 -